UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTHONY RODESKY, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 15-cv-1002-JEH |
| | ) |
| RANDY PFISTER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is now before the Court on Defendant Rob Jeffreys' Combined Motion for Judgment as a Matter of Law Pursuant to Federal Rule of Civil Procedure 50(b), or in the Alternative, a New Trial Under Federal Rule of Civil Procedure 59(a) (Doc. 189). For the reasons stated below, the Motion is DENIED.

### BACKGROUND

On December 3, 2021, a jury found in favor of Plaintiff and against Defendant Jeffreys, in his official capacity as Director of the Illinois Department of Corrections ("IDOC"), for violating the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") by failing to accommodate Plaintiff's disability by moving him to a lower gallery at Pontiac Correctional Center ("Pontiac"). (Doc. 161). The jury awarded Plaintiff $400,000 in compensatory damages. *Id.*

Defendant moves for judgment as a matter of law under Rule 50(b) and asserts that Plaintiff failed to establish there was an unreasonable delay in his accommodation. (Doc. 189). Alternatively, Defendant requests a new trial pursuant to Rule 59(a) because he claims that (1) the Court erred by not providing the appropriate jury instruction to

1

obtain compensatory damages under the ADA, and (2) the verdict was against the manifest weight of the evidence. Defendant also moves for remittitur because he claims that the damages were not rationally connected to the evidence or comparable to awards in similar cases. Plaintiff filed a Response in opposition. (Doc. 194). This Order now follows.

## ANALYSIS

### I. Motion for Judgment as a Matter of Law under Rule 50(b)

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." FED. R. CIV. P. 50(a)(1)(A)–(B). "A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." *Id.* at (a)(2). "The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." *Id.*

"If the court does not grant a motion for judgment as a matter of law under Rule 50(a) . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." *Id.* at (b). "In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id.*

"Judgment as a matter of law is proper only if a reasonable person could not find that the evidence supports a decision for a party on each essential element of the case, viewing the evidence in the light most favorable to the nonmovant." *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001) (citing *Jones v. Western & Southern Life Ins. Co.*, 91 F.3d 1032, 1036 (7th Cir. 1996)). When considering a renewed motion for a judgment as a matter of law, the court does not assess credibility or weigh the evidence. *Thorne v. Member Select Ins. Co.*, 882 F.3d 642, 644 (7th Cir. 2018). The evidence is construed "strictly in favor of the party who prevailed before the jury." *Passananti v. Cook Cnty.*, 689 F.3d 655, 659 (7th Cir. 2012). "But a verdict supported by no evidence or a mere scintilla of evidence will not stand." *Martin v. Milwaukee Cnty.*, 904 F.3d 544, 550 (7th Cir. 2018) (citing *Thorne*, 882 F. 3d at 644). "In other words, [the court's] job is to decide whether a highly charitable assessment of the evidence supports the jury's verdict or if, instead, the jury was irrational to reach its conclusion." *May v. Chrysler Grp., LLC*, 716 F.3d 963, 971 (7th Cir. 2013).

Defendant argues that he is entitled to a judgment as a matter of law because Plaintiff failed to establish it took the IDOC an unreasonable amount of time to move him to a lower gallery. It is undisputed that Plaintiff arrived at Pontiac on December 23, 2012; the Medical Director issued a low gallery permit on May 9, 2013; and Plaintiff was moved to a lower gallery on June 4, 2013. (Doc. 171 at 18:16-22; 133:2-4). Plaintiff waited approximately six months to be moved to a lower gallery, but Defendant claims that the relevant time period is actually limited to only twenty-six days between May 9 and June 4, 2013, because the Medical Director testified that it was not medically necessary for

3

Plaintiff to be on a lower gallery prior to the issuance of the medical permit. (Doc. 175 at 95:5-10; 109:4-9).

Defendant argues that twenty-six days is far from an unreasonable delay. In support of his assertion, Defendant incorrectly relies upon cases involving claims under Title I of the ADA, which governs employers, rather than Title II, which applies to public entities like the IDOC. *See* 42 U.S.C. § 12131(1)(B) (defining "public entity" as "any department … of a State …"). The cases related to an employer allegedly failing to accommodate an employee's disability are inapplicable to this matter. *See Cloe v. City of Indianapolis*, 712 F.3d 1171 (7th Cir. 2013) (four-month delay in securing accessible parking for employee was not failure to accommodate), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see also Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000) (twenty-month delay in reassigning employee was not unreasonable)).

The only remotely applicable case Defendant cites is a non-binding decision that improperly relied upon Title I standards. *See Shaw v. Williams*, No. 16-cv-1065, 2018 WL 3740665 (N.D. Ill. Aug. 7, 2018). The court's holding in *Shaw* was based on a finding that the plaintiff's sprained ankle did not qualify as a disability under the ADA. *Id.* at *9. Even though this finding was dispositive, the court went on to explain its belief that a four-month delay in moving the plaintiff to a lower gallery was not unreasonable and improperly relied upon cases involving Title I rather than Title II when making this determination. *Id.* at *10. Unlike Mr. Rodesky, the plaintiff in *Shaw* was given a variety of

4

other accommodations, such as crutches and meals in his cell, before moving to a lower gallery. *Id*.

Defendant also asserts that the delay was not unreasonable because an inmate is not moved as soon as a medical permit is issued, especially at a maximum-security prison like Pontiac. (Doc. 171 at 219:8-12). The Medical Director testified that it takes a couple days before the medical permit is fully processed and the inmate receives a copy of it. (Doc. 175 at 65:16-23). Witnesses from the IDOC provided general information about what factors they consider when assigning an inmate to a cell, such as safety considerations and available space. (Doc. 171 at 229:1-25; 230:1-18; 241:13-16). However, Defendant did not explain why it was necessary for Plaintiff in particular to remain housed on an upper gallery for approximately six months.

Here, the Court finds that the record contains abundant evidence for a reasonable jury to find that the IDOC failed to accommodate Plaintiff's disability. Plaintiff was taken to the transfer bus at Tamms Correctional Center ("Tamms") in a wheelchair and carried up into the bus because he was "light weight-bearing" and "couldn't do stairs." *Id.* at 58:17-25; 59:1-10. When he arrived at Pontiac, Plaintiff informed the intake nurse that he was an insulin-dependent diabetic, recently had surgery on August 24, 2012, had been in the infirmary for the last year, was light weight-bearing, and was told when he left Tamms that he would go to the infirmary. *Id.* at 63:21-25. Rather than going to the infirmary, however, officers escorted him up multiple flights of stairs to the North House. *Id.* at 64:2-4; 65:5-11. The evidence shows that Plaintiff continued to ask IDOC personnel and medical staff for an accommodation and filed a grievance on January 7, 2013. *Id.* at

81:5-12; 83:19-23; 84:11. Additionally, the evidence shows that his wound went from a "pinprick" (*id.* at 57:5-11) that was 99 percent healed when he left Tamms (Doc. 175 at 228:15-18) to two centimeters in length on January 11, 2013, with minor gaping (*id.* at 67:17-18, 68:13-14), to three centimeters in length later in January 2013 (*id.* at 69:24-70:5), widening from a half centimeter to one centimeter in April 2013 (*id.* at 77:2-9), to four centimeters in length by May 2013 (*id.* at 80:10-17).

The jury was not required to accept Defendant's theory that the delay was only twenty-six days, and neither will this Court. It was reasonable for the jury to find that a delay from the date Plaintiff arrived at Pontiac on December 23, 2012, until he was moved to a lower gallery on June 4, 2013, was unreasonable based on the evidence establishing that the IDOC knew about his disability upon his arrival at Pontiac and failed to accommodate it. The jury was entitled to rely on Plaintiff's testimony that he was in pain and evidence that the wound worsened because he was forced to walk up and down multiple flights of stairs for approximately six months. There is no basis for granting a judgment as a matter of law to Defendant. *See Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 601 (7th Cir. 2019). ("Only if no rational jury could have found for the nonmovant may [the court] disturb the jury's verdict."). Defendant's Motion for Judgment as a Matter of Law is denied.

## II.  Motion for a New Trial under Rule 59(a)

Alternatively, Defendant moves for a new trial under Rule 59(a) and argues that (1) the Court erred by not providing the appropriate jury instruction to obtain damages under the ADA, and (2) the verdict was against the manifest weight of the evidence.

Under Rule 59(a), a court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014). In ruling on a motion for a new trial, the court may weigh the evidence, assess the credibility of witnesses, "and the comparative strength of the facts put forth at trial." *Meija v. Cook Cnty., Ill.*, 650 F.3d 631, 633 (7th Cir. 2011).

### A. Jury instruction

First, Defendant argues that a new trial is warranted because the Court should have instructed the jury about the deliberate indifference standard for obtaining compensatory damages under the ADA. Plaintiff asserts that the instructions the jury received adequately conveyed the law, and even if a deliberate indifference instruction should have been given, Defendant was not prejudiced.

"To win a new trial based on an erroneous jury instruction, the [moving party] must show both that the instructions did not adequately state the law and that the error was prejudicial to them because the jury was likely to be confused or misled." *Boyd v. Illinois State Police*, 384 F.3d 888, 894 (7th Cir. 2004) (citing *Gile v. United Airlines, Inc.*, 213 F.3d 365, 375 (7th Cir. 2000)). "[E]ven if the jury instruction was patently incorrect, [the moving party] still must establish that it was prejudiced by the improper instruction." *Id*. A jury instruction is prejudicial when "considering the instructions as a whole, along with

7

all of the evidence and arguments, the jury was misinformed about the applicable law." *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001).

As an initial matter, the Court finds that the inclusion of an instruction on deliberate indifference under the ADA has been waived. The Court ordered the parties to file their proposed jury instructions in advance of the final pretrial conference. (d/e 11/5/2021). The parties filed their proposed instructions on November 9, 2021. (Docs. 142-144). Defendants submitted a proposed instruction titled "Elements of Plaintiff's Claim Reasonable Accommodation," which contained an element that Plaintiff must prove by a preponderance of the evidence that "Defendant IDOC acted with deliberate indifference." (Doc. 142 at 7, ¶ 6).

During the final pretrial conference on November 16, 2021, a discussion was held regarding modifications for the jury instructions. (Minute entry 11/16/2021). The Court directed the parties to confer regarding the instructions that had not been ruled upon and to file a status report by November 24, 2021. *Id.* No status report was filed.

Trial commenced on November 29, 2021. Throughout the trial, the Court repeatedly asked the parties about their progress on the jury instructions. On December 1, 2021, the Court stated: "[T]his is why I like to have the jury instructions done before trial because I can say we are ready to go, but we're not. And I still don't have anything from you all on the ADA thing. I assume you're not ready to discuss those instructions tonight." (Doc. 175 at 236:1-6).

The Court held a jury instructions conference with the parties on December 2, 2021 and discussed the instruction regarding the elements of an ADA claim in detail. (Doc. 166

8

at 52-67). During this discussion, Defendant admitted that deliberate indifference should not be included as an element of an ADA claim and later asked to "add the deliberate indifference under the ADA to the damages." *Id.* at 67:12-14; 76:11-13.

When the Court asked Defendant for the basis of the deliberate indifference instruction, Defendant explained that the standard comes from *Lacy v. Cook County, Illinois*, 897 F.3d 847 (7th Cir. 2018). *Id.* at 76:16-25; 77:1-25. In *Lacy*, the Seventh Circuit adopted the two-part standard "requiring both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Id.* at 862-63 (internal quotation marks and citations omitted).

Up until this point, however, Defendant had not requested or submitted a proposed jury instruction to the Court based on *Lacy*, other than the inclusion of deliberate indifference as an element of an ADA claim. As a result, the Court concluded that the issue had been waived. The Court explained:

> So I'm not going to give that instruction. Number one, at this point any such argument has been waived. It's way too late to be bringing this up before me. I've been more than patient with everything that has gone on at the last minute. This would be a very significant issue that would need to be briefed; that the only notice anyone was given to this was this being thrown in as an element incorrectly of an ADA claim. It relates … to damages. So the only hint anybody got was that there was a reference to deliberate indifference listed incorrectly as an element in the elements instruction. And now at 4:15 on the night before we're going to instruct the jury, to say, oh, that there's a legal requirement based on this case out there for the first time with no pattern instruction – I don't have an instruction, a proposed instruction from you on it in the 18th set for instructions that I've gotten from anybody. So, no, I'm not going that instruction.

(Doc. 166 at 78:14-25; 79:1-9).

9

When the trial concluded, the Court instructed the jury about the elements of an ADA claim by providing an instruction modeled after Seventh Circuit Pattern Instruction 4.03. The Court's jury instruction #25 stated:

> On the ADA and § 504 claim against the Illinois Department of Corrections, Plaintiff claims that the IDOC unlawfully refused to give him a "reasonable accommodation." To succeed, Plaintiff must prove four things by a preponderance of the evidence:
>
> 1. Plaintiff had a disability. I will define "disability" and several other important terms for you in a few minutes;
>
> 2. Plaintiff requested an accommodation;
>
> 3. The Illinois Department of Corrections was aware of Plaintiff's disability at the time of Plaintiff's request;
>
> 4. The Illinois Department of Corrections failed to provide Plaintiff with a reasonable accommodation;
>
> If you find that Plaintiff has proved each of these things by a preponderance of the evidence, you should turn to the issue of Plaintiff's damages. If you find that Plaintiff has failed to prove any of these things by a preponderance of the evidence, your verdict should be for Defendant.

(Doc. 159 at 26). Based on this instruction, the jury was adequately informed about the elements of an ADA claim.

Even if the Court erred by not giving an instruction on deliberate indifference, Defendant was not prejudiced by this purported error. The jury concluded that the IDOC knew a harm to his federally protected rights was substantially likely, as the jury found that Plaintiff met elements one, two, and three of an ADA claim by showing that the IDOC knew of his disability and that he requested an accommodation. The jury also found that Plaintiff met the fourth element by showing that the IDOC failed to act by

providing him with a reasonable accommodation. *See Lacy*, 897 F.3d at 863. The Court's instruction was formulated to encompass each of the findings required to establish deliberate indifference.

Based on the evidence at trial, the Court finds that Defendant was not prejudiced because there was sufficient evidence in the record for the jury to have found deliberate indifference if it received the requested instruction. The IDOC had ample notice that Plaintiff was disabled. During his incarceration, Plaintiff received medical care and medication for his diabetes. Plaintiff reported his disability upon his arrival at Pontiac on December 23, 2012, and used the grievance process to request an accommodation on January 7, 2013. The evidence shows that Plaintiff's ulcer worsened while the IDOC waited until May 9, 2013 to issue a low gallery permit and then until June 4, 2013 to move him. Plaintiff testified that he was in pain as he went up and down the stairs twice a day for his insulin injections. The evidence presented at trial was sufficient for a jury to find that the IDOC knew a harm to a federally protected right was substantially likely and failed to act upon that likelihood. *See Lacy*, 897 F.3d at 863.

### B. Jury verdict

Defendant also argues that the jury's verdict was against the manifest weight of the evidence for a variety of reasons. "The district court's power to grant a new trial on weight grounds is not unlimited: a certain deference to the jury's conclusions is appropriate. This deference is encompassed within the manifest weight standard, which balances a decent respect for the collective wisdom of the jury against a duty not to

approve miscarriages of justice." *Meija*, 650 F.3d at 635, n.1 (internal quotation marks and citations omitted).

First, Defendant argues that there is no evidence that Plaintiff's wound got worse by going up and down the stairs at Pontiac between December 23, 2012 and June 4, 2013. Plaintiff was "99 percent healed" when he arrived at Pontiac. (Doc. 172 at 52:20-25). Defendant argues that the evidence demonstrated that Plaintiff's ulcer was getting better at times and that diabetic ulcers are "usually chronic." (Doc. 175 at 104:13-14; 105:6-19). Defendant relies upon testimony from Pontiac's Medical Director, who stated that diabetic ulcers are "extremely difficult to manage" and "might heal, but you don't know what, if they reopen, whether it will continue to drain or continue to progress." *Id.* at 105:17-24. In response, Plaintiff argues that his testimony and the medical records show the wound got worse. For instance, Plaintiff testified that he was walking up and down multiple flights of stairs twice a day and the ulcer "got progressively worse" and "[t]he pain was worse because [he] was putting too much weight on it." (Doc. 171 at 94:17-25).

Second, Defendant asserts that "the uncontroverted evidence also establishes that it was not medically necessary for Plaintiff to be on a lower gallery prior to the low gallery permit issued on May 9, 2013." (Doc. 190 at 11) (citing Doc. 175 at 95:5-10; 109:4-9)). Defendant argues the evidence shows Plaintiff's ulcer was not infected on May 24, 2013; the ulcer actually got worse after he moved to the lower gallery on June 4, 2013; and the ulcer reopened on February 23, 2015, for reasons unrelated to his placement on a higher gallery. *Id.* at 112:11-16; 113:11-15; 129:2-14; 133:1-4. Defendant claims that any events occurring after June 4, 2013, were not attributable to the IDOC because Plaintiff received

12

the accommodation he requested when he was moved to a low gallery. In response, Plaintiff argues that Defendant failed to cite any authority that the ADA requires a doctor to determine that an accommodation is necessary. He also asserts that the jury was permitted to draw the reasonable inference that the accommodation was necessary as soon as Plaintiff arrived at Pontiac based on the evidence presented at trial.

Third, Defendant asserts there is no evidence that Plaintiff's amputation resulted from him going up and down the stairs. Defendant claims that Plaintiff chose to amputate his leg even though it was not medically necessary, and the leg was "salvageable." *Id.* at 87:10-16; 134:11-23. During closing arguments, Plaintiff's counsel argued that even if the jury did not believe that the IDOC's failure to accommodate contributed to the amputation of his leg, they should still award damages for the pain and suffering he endured while waiting six months for the IDOC to accommodate him. (Doc. 172 at 73).

Finally, Defendant asserts that most of the evidence in Plaintiff's closing argument related to events that occurred at Tamms, which had no bearing on his claim against the IDOC. Plaintiff argues that this is "demonstrably false" because only ten percent of the closing argument described events at Tamms, and most of these arguments were made during rebuttal in response to Defendant's "offensive" assertion that Plaintiff caused his own wounds. (Doc. 194 at 12) (citing Doc. 172 at 31:18-54:15; 72:9-78:25)).

Here, the Court finds that the jury's verdict was not against the manifest weight of the evidence because, even when viewed under the more lenient standards of Rule 59(a), Defendant's arguments are not persuasive. As the Court explained above, the record contains ample evidence for a reasonable jury to have found that the IDOC

violated the ADA by failing to accommodate his disability by moving him to a lower level. The jury's verdict was consistent with the evidence presented at trial, and there is no basis for granting a new trial.

### III. Remittitur

Defendant argues that the Court should reduce the damages award because it was excessive and inconsistent with awards in similar cases. "[A] jury has wide discretion in determining damages, so long as it has a reasonable basis." *American Nat. Bank & Trust Co. v. Regional Transp. Auth.*, 125 F.3d 420, 437 (7th Cir. 1997) (citation omitted). "Underlying this deference to a jury's assessment of damages is the acknowledgment that the actual measure of damages is an exercise of fact finding." *Spina v. Forest Pres. Dist. of Cook Cnty.*, 207 F.Supp.2d 764, 771 (N.D. Ill. 2002) (citing *Cygnar v. City of Chicago*, 865 F.2d 827, 847 (7th Cir. 1989)). Judicial review of the jury's fact-finding as to damages is limited. The court may only consider "whether the award is 'monstrously excessive'; whether there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas; and whether the award is roughly comparable to awards made in similar cases." *U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1285 (7th Cir. 1995); *Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 566 (7th Cir. 2006).

Defendant asserts that the jury's award of $400,000 in compensatory damages is "monstrously excessive" because there is no evidence showing that the stairs caused Plaintiff any physical injury, that he was entitled to a medical permit before May 9, 2013, and that the delay was unreasonable. (Doc. 190 at 12). As a result, Defendant asserts that

14

there was no rational connection between the award and the evidence, which indicates that the verdict was "merely a product of the jury's fevered imaginings or personal vendettas." *Id.* (citing *Adams v. City of Chicago*, 798 F.3d 539, 543 (7th Cir. 2015)).

Defendant also argues that the award of $400,000 is inconsistent with awards in similar cases and suggests that the verdict be reduced to $15,500.00, which is the combined average of the three cases Defendant relies upon. First, Defendant cites to *Hubbard v. Rite Aid Corporation*, in which the court reduced the award for two Rite Aid customers who proved the pharmacy failed to accommodate their disabilities because the store did not have sufficient accessible parking spaces and the ice cream counter was too high. (Doc. 190-2 at 2-5). The judge awarded $4,000 for each plaintiff for each of their three visits to the store, totaling $24,000. The case is distinguishable because there were no allegations of physical pain or injury.

Defendant also cites *Handwork v. Mohr* and incorrectly states that it involved a "jury verdict of $22,000 for failure to provide hearing aids under the ADA." *Id.* at 190-2 at 6-7. As Plaintiff correctly notes, however, this was not a jury verdict but rather a settlement between the parties. (Doc. 194 at 15). There was also no admission of liability by the corrections department. (Doc. 190-2 at 7).

Finally, Defendant cites to *Cox v. Massachusetts Dep't of Correction*, No. CV 13-10379-FDS, 2018 WL 1586019 (D. Mass. Mar. 31, 2018), and states that the "district court ordered a new trial solely limited to the issue of damages for plaintiff's access to procedures to report and resolve grievances unless plaintiff accepted the remittitur of $1,000 from the jury verdict of $250,000 for failure to accommodate under the ADA."

(Doc. 190 at 13). This is a misrepresentation of the court's findings, however. *Cox* involved three separate damages awards for violations of the ADA by a prison after defendants succeeded on their motion for judgment as a matter of law on a fourth claim. The remaining awards totaled $225,000. The court analyzed each award separately and only reduced the award of $25,000 for lack of access to procedures to report and resolve grievances. *Cox*, 2018 WL 1586019 at *19-20. The court reasoned that because there had been no evidence that plaintiff was actually prevented from reporting or resolving a specific grievance, remittitur to nominal damages of $1,000 was appropriate. The court did not reduce the other awards totaling $200,000 because, even though the evidence was slim, the plaintiff established an actual injury. *Id.* As Plaintiff accurately notes, this is plainly not a remittitur from $250,000 to $1,000.

    The Court finds that the cases Plaintiff cites are more applicable and demonstrate that juries have awarded roughly comparable amounts in similar cases. For example, in *Bell v. Williams*, the jury awarded a pre-trial detainee $504,000 in compensatory damages for violations of the ADA and an excessive force claim. (Doc. 194-1). The plaintiff, whose leg had been amputated, was denied the use of his wheelchair when he was forced to hop on one leg to another cell and fell. No. 18-CV-01245-SI, 2021 WL 5447005, at *1, 3 (N.D. Cal. Nov. 21, 2021).

    Plaintiff also cites *Richard v. Pfister*, 483 F.Supp.3d 532 (N.D. Ill. 2020), in which the jury awarded a prisoner $750,000 in compensatory damages after finding that the IDOC violated the ADA by keeping the plaintiff at an intake facility for nearly a year because it

could not accommodate his oxygen tank during transport to a permanent facility, where he would have access to programs and services. (Doc. 194-2).

Finally, Plaintiff cites a case from the Western District of Missouri in which a jury awarded over $1 million in compensatory damages to an arrestee who was paraplegic and confined to a wheelchair. *Barnes v. Gorman*, 536 U.S. 181, 183-84 (2002). The transport vehicle was not equipped to accommodate the plaintiff's wheelchair, so officers removed him from the wheelchair and strapped him to a bench in the back of the vehicle. *Id.* at 183. During transport, the plaintiff fell to the floor, injuring his shoulder and back and rupturing his urine bag. *Id.*

Here, there is a rational connection between the evidence and the jury's award, which is roughly comparable to awards in similar cases. Additionally, the jury indicated that they followed the Court's instructions and engaged in a deliberation about damages because they awarded $400,000 rather than Plaintiff's counsel's suggestion of $500,000 during closing. (Doc. 159 at 30). This indicates that the jury's verdict was not "a product of the jury's fevered imaginings or personal vendettas," as Defendant contends. *See Adams*, 798 F.3d at 543. Defendant's request to reduce the jury verdict is denied.

**IT IS THEREFORE ORDERED:**

**Defendant Rob Jeffreys' Combined Motion for Judgment as a Matter of Law Pursuant to Rule 50(b), or in the Alternative, a New Trial Under Rule 59(a) [189] is DENIED.**

ENTERED: 2/2/2023

s/ Jonathan E. Hawley
Jonathan E. Hawley
United States Magistrate Judge
